### Ex parte George Washington.

#### June 21, 1881.

The written report of the chief of police of St. Louis, on which offenders arrested without process are tried, is not void because the chief's name is signed thereto by another, if done on his authority.

APPLICATION for *habeas corpus*.
*Prisoner remanded.*
WILLIAM BUSCH, for the petitioner.
L. BELL and S. ERSKINE, *contra*.

LEWIS, P. J., delivered the opinion of the court.

This is a second proceeding by *habeas corpus*, under which the prisoner asks to be released from the city workhouse, where he is detained by virtue of an execution from the Second District Police Court of the city of St. Louis. All the points made in his behalf were disposed of on his former application to this court, with the exception of one which is here presented in a stipulation signed by counsel on both sides. By this it is agreed that the question for determination is, whether " the report of the chief of police," under which the prisoner was tried, was required by law " to be signed by the chief of police personally, or whether such signature could be affixed by some person authorized by the chief for that purpose." In order to give effect to this stipulation, we must assume the facts to be, in this case, that the report was not signed by the manual act of the chief himself, but that the signature of his

name, which appears at the bottom of the paper, was placed there by some person by him authorized for that purpose.

By chapter 30, section 19, of the Revised Ordinances, it is provided that, "No summons or warrant shall be issued against any person lawfully arrested by any officer or member of the city police, but in every such case a trial shall be had upon the written report of the chief of police."

Questions about signatures to written instruments, their sufficiency, or their necessity as a means of authentication, have, as a general rule, been considered by the courts with exclusive reference to the Statute of Frauds. That statute is sufficiently comprehensive to influence nearly all voluntary transactions between man and man, about which litigation is likely to arise. Its constant precept is that a written instrument, in order to be effectual for the purpose of establishing certain relations, must be " signed by the party to be charged therewith, or by some person by him thereunto lawfully authorized." It results that the legal, as well as the popular, mind has long been accustomed to regard the signature at the bottom of a paper as its sole and essential feature of authenticity. But, aside from the Statute of Frauds, it would be difficult to show any rule of law, or of natural philosophy, which will make the placing of one's name at the conclusion of a paper, necessary in all cases, in order to validate such paper as his act. Before the enactment of the statute, even land-titles were transferable by livery of seisin without any paper memorial whatever. A deed might be executed by the seal only, and instruments were sufficiently authenticated by any mark which the maker chose to adopt for that purpose, without writing his name at all. When a man undertakes to bind himself by word of mouth, he never considers it necessary to utter his own name in full, by way of sequence to his proposal. If he does so in writing instead, what rule of natural reason should require the addition of the name,

any more than in the other case? The addition of the signature may be useful by way of testimony to prove that the act was done by the party who signed ; but it cannot on natural grounds have any higher office. If the writing be unquestionably the act of the party, and no statutory rule of proof intervenes, a signing of the name of the actor will add nothing to its efficacy.    3 Pars. on Con. 8.

The ordinance, as above quoted, says nothing about any signature to the chief's report. The Statute of Frauds has, of course, nothing to do with the case. We think it would be safe to hold, if necessary to decide the question, that a written report from the chief of police, without any signature, if presented by him to the Police Court, and there received and acted upon as such, would satisfy the terms of the ordinance.

The question presented by stipulation is, not whether a person other than the chief may make a report in his name or by his authority, but whether the report of the chief himself may properly have his name or signature manually attached thereto by some other person, by him authorized so to attach the same. There is here no such question as was decided by the Supreme Court in *Kansas City* v. *Flanagan*, 69 Mo. 22. The opinion in that case proceeds upon the ground that the information " was not preferred by the city attorney in person, but by B. L. Woodson, who, during the temporary absence of the city attorney, performed his duties at his request." If the information in that case had been preferred by the city attorney, but his signature thereto had been placed upon it by another's hand, with his authority and consent, a different question would have been presented. If, for example, the information had been printed, signature and all, and so filed by the city attorney, we cannot perceive, from anything in the opinion of the Supreme Court, that it would have been held insufficient. Such is, substantially, the case before us. Whether the chief's signature was written or printed by

another, with his authority, upon his report, can make no difference in the controlling principle. The cases are numerous in which it is held that the signing of one's name, under his authority and direction by another person, is the act of him whose name is so signed. *Gardner* v. *Gardner*, 5 Cush. 483; *Ball* v. *Dunsterville*, 4 Term Rep. 313; *King* v. *Longnor*, 4 Barn. & Adol. 647; *Saunderson* v. *Jackson*, 3 Esp. 180; *Schneider* v. *Norris*, 2 Man. & Sel. 286. The stipulation in this case assumes that the chief's signature to the report was affixed by a person "authorized by the chief for that purpose." This renders it unnecessary to inquire here what manner or form of authority would be sufficient, or otherwise.

The foregoing reasons are considered sufficient to demand that the prisoner, in the present case, be remanded into custody. It may be here added, however, that there is hardly a fair parallel between the chief's report, as contemplated in the city ordinance, and the information which was considered in *Kansas City* v. *Flanagan, supra*. "Information," as there used, is a word of technical description, having a common-law meaning. The instrument, according to all ancient rules, must be signed by a proper law officer. The Kansas City Charter designated, as that proper officer, the city attorney. But the "written report of the chief of police" has no such technical or common-law character. Neither law nor usage can be cited to prove its title to any special characteristic. It must be considered with reference to the general scope and purposes of the system of laws which it is designed to aid. It needs hardly more than a glance at the act establishing the metropolitan police of the city of St. Louis, with its numerous amendments (Rev. Stats., sect. 1527), to perceive that in the multifarious duties and responsibilities imposed upon the commissioners, and in the fact that "to enable the said board" to discharge the same, they are authorized and required "to appoint, enroll, and employ a permanent

police force,'' as well as in other comprehensive features of the law, it is demonstrated that no such impracticability was ever intended as that of requiring the chief of police to give his personal attention to every arrest and the prosecution of every offender before both of the Police Courts. The language of the act, in the first instance, literally puts the performance of every duty upon the commissioners. And yet its whole tenor shows that these duties are in fact to be performed through the members of the police force. Such is the only practicable way of carrying out the objects of the law. The lesson thus taught is that the law and the ordinances passed under its authority must be so construed as to give them a practical operation for the public welfare and good order, and not to an effect that may render them impossible of execution.

The prisoner is remanded. Judge THOMPSON concurs ; Judge BAKEWELL is absent.